The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. We're on the record in case number 4-22-0894, People v. Mercedes-Byrd. Counsel for the appellant, could you identify yourself for the record, please? Samuel Steinberg for the appellant, Mercedes-Byrd. Thank you. Thank you, Mr. Steinberg. And for the appellate? Luke McNeil. All right. Thank you, Mr. McNeil. Mr. Steinberg, you may begin your argument. Thank you. May it please the court. My name is Samuel Steinberg and I represent Mercedes-Byrd. First, thank you for oral argument in this sensitive case, important and sensitive case. Since this is being recorded, I'm going to use initials, A-R-Z-S, just to set the ground record. Our brief raises two main arguments for kind of reversal and then another argument regarding the sentence. Due to this court's recent opinion in Wheaton, which I submitted as supplemental authority, I would like to start out with the critical issue first, unless this court would like to discuss the case. And regarding the crinkle issue, our argument is that this case needs to be remanded and reversed because Byrd's allocation statement, his complaints against his defense counsel and attorney regarding evidence not presented at trial, regarding not contesting witnesses, is, fits the bare minimum to reach a crinkle issue. It alleges ineffective assistance of counsel. A few examples that this case is aware of, Henry Jonathan, that just involved, that's an Illinois Supreme Court case that involved just minimum statements in a post-sentencing report, juvenile case, regarding that the attorney did not call them. Wheaton, which I submitted as supplemental authority, involves PSI statement, his attorney did nothing. And then during his allocution statement, his attorney said he failed to call witnesses or provide evidence. Then a case cited in the briefs, both briefs, was a 2021 decision in Robinson. That's a similar sexual assault case here in which that defendant complained about evidence not presented at trial. His defense counsel did not, public defender uses those words, did not do anything. I believe that opinion was actually authored by Justice Harris. When this court views Mr. Byrd's allocation statements here, he's clearly complaining about his attorney. We'll start out on page 442 of the record where everything, where his allocation statement starts out. And he's talking about the state does not, he starts out by contesting the state's factual evidence. And then he says, just good stories uncontested by my attorney. Unfortunately, this court isn't about stories, it's about truth and facts. He clearly not only invoked his attorney there, but then the next paragraph, he goes, crucial pieces of evidence in my defense were never mentioned or brought up. And if they had been, I am beyond confident that the jury would have rendered a not guilty verdict. Mr. Steinberg, could I interrupt you there for a moment, just as to that identified statement and allocation. That statement had sandwiched between defendants' references to the state's attorney, what the state's attorney was presenting. Should that context affect our view of that one statement, the crucial pieces of evidence statement here? In other words, he is referring to what the state was presenting when he then makes that statement, crucial pieces of evidence in my defense were never mentioned. Does that have any bearing on whether or not he was being critical of his counsel? That has some bearing on whether he's being critical, but when you look at the statements in totality, he says, just as good stories uncontested by my attorney, expressly references his attorney. And then he says, crucial pieces of my evidence in my defense were never mentioned. When he mentions his defense, who's in control of presenting evidence there? Generally, that is counsel in charge of presenting the evidence. He's referencing what his defense counsel did not do in a broader sense. Also, this trial court is very familiar. The state would like to characterize this statement as rambling, going on for 10 pages, everything. But during the statements, at the very beginning of it, he mentions decisions his counsels should and should not have done, stuff that was not brought up. And he does mention that messages should have been brought up, medical reports, evidence that AR potentially had an STD that neither him nor his girlfriend, AR's mother had. He mentions a statement by Clarence Elder. Those are crucial pieces of evidence that his defense counsel never brought up. And we argue that this meets the bare minimum. And this is, in the context of the entire trial, this wasn't the actual first time he brought this up. And I know I didn't brief that, but he did bring up during the trial between his, after Z.S. testified, he actually had his sister, he complained about his counsel and had his sister testified. And during a colloquy, beginning of that colloquy, he complained about his counsel's performance. When read in context, even if you just look at the bare bones of this, which I admit that my briefs have done, this meets the minimum. This is very similar to the statement in Robinson. Mr. Justice Daugherty, do you have a question? I see your hand raised. Counselor, if I may interrupt you though, and kind of discussing the issue of context there, as we look at this, I mean, there is no specific reference. And I understand that even after the statement that we've been discussing, where he states, you know, crucial pieces of my evidence, and after that sentence, he does say, even without my evidence, there is no evidence. But then, as was said, he's focusing more on what the state failed to sufficiently present. I guess when I compare those minimum statements and whether they're sufficient to trigger a crinkle inquiry, when I look at the Richardson case that you cite in your brief, and in that, they're talking about the medical records, physical evidence, that defendant goes on to suggest there was a witness list and none of the witnesses were fault. How should this court compare those when one is clearly more specific than the other? And this seems to be somewhat buried in, as Justice Harris mentioned, the context of complaints, generally that the evidence at trial was not sufficient to convict him. Justice Lanyard, now, I mean, you mentioned the crucial pieces of evidence, but also above that, he says, good stories uncontested by my attorney. And like that, and like the defendant in Robinson, he does mention medical reports, statements to the nurses that should have been cross-examined, brought out, text messages. This is very, to me, this is almost on point to cases such as Robinson. And even if it's not, I mean, it's such a minimal standard. All you have to do is just mention my attorney should or should not, or should have accomplished a task. And this is clearly at the beginning of the statement, Mr. Byrd, who's very, who's not well-versed in the grounds of ineffective assistance to counsel, he's contesting his counsel's performance. Good stories uncontested by my attorney, followed up very shortly with crucial pieces in my defense were never mentioned or brought up. And then once he's established that his attorney failed to do this stuff, he brings out that other evidence, which we can discuss such as the lack of physical evidence, text messages, inconsistent statements by AR, a statement by Clarence Elder, all of which were ways in which his attorney could have contested this. And pursuant to this court's remedy here, the general remedy for a critical inquiry that this court has set out is generally hold the other issues in abeyance and remand for further proceedings to hold a critical inquiry. Mr. Byrd certainly has complaints against his attorney. This will allow a complete record. However, if this court finds that the issue one is dispositive, I leave it up to this court's discretion. Now on issue one, here, the trial court made a pretrial vow not to let other crime evidence be the reason, be the reason that the jury convicts Mr. Byrd because he's a bad person. This record here shows that this vow was violated by the state. The evidence was, the prejudicial impact of the evidence far outweighed its probable value, even if the state is correct that it could be admitted for propensity purposes, for the minimal propensity it surfaces. And even if so, as warned by cases such as Donahoe and Boyd, this became a focal point, a critical point that the state just hammered throughout its case. And the state had a great line during closing arguments. I mean, they said, this is not a he said or she said case. This is a they said case. The state used this evidence. Isn't that exactly how they're supposed to use the evidence? Because we do have a he said, she said, if we didn't have that information. Your client argues, no, she's making it up. It has very much, very much probative value if there was another young woman, not of age, when mom wasn't home, when the paramour was the mom, and there was inappropriate conduct that began with rubbing, proceeded to vaginal contact. It just seems like that's exactly how it should be used. They're not arguing to punish for that conduct. They're arguing the propensity from that prior experience. Mr. Stowery, the state's arguing that they should also, if you if you believe the yes, you should believe you should also find him guilty. There's their bit. I mean, when I read the state's closing argument, they do a compare and contrast, but they're very much encouraging. Look, he did this to someone else in the past. Therefore, find him guilty, regardless of whether you believe AR's credibility, regardless of whether there's corroborating, whether or not there's corroborating circumstances of this event. How is that not always true? I mean, the state has to make comment when other crimes evidence is introduced. So how is what you're saying not always true? The state made this a focal point of the case. I would like to point out that in the briefs, also argue that there's only general similarities between ZS's conduct and AR's conduct. And in fact, while AR testified regarding ongoing abuse of actual sexual penetration of like penis to vagina contact, mouth to mouth to mouth to penis contact and other events of that, and even being forcible raped by at a sink, ZS never testified to that. She never testified regarding penis to vagina contact. She never testified of ongoing sporadic events. These are four sporadic events. The state hammered them. There's general similarities between them that are just insufficient to be struggling. That it was an abuse by a person in a position of trust. The specific acts, it's not like we're trying to establish a modus operandi to identify that the defendant here was the same person who committed the other offenses. We're trying to establish the similarity of the breach of trust by a person in a position of trust in very similar household circumstances. Part of the balancing test is comparing the similarities, but it's also noticing the differences. And as the differences I've pointed out, increase the relevance and prejudice, the relevance decreases and the prejudice becomes even greater. And there's also a gap in time, which makes these less probative than probative. Mr. Steinberg, going back to Justice Doherty's initial question regarding the propriety of the prosecutor's comments, in your view, what would be the extent of permissible commentary by the prosecution relating to evidence admitted pursuant to section 115-7.3? In my view, and a little bit based on my former experience as an AAG, the prosecutor can mention it to kind of rebut a testimony, kind of rebut, a little bit rebut Bird-Snells, but also say that there might be a little bit of a tendency to be inclined to a sexual inclination towards young girls. But then to just hammer it for three pages, compare and contrast, bring it up in opening statements, feature in opening statements, almost convey, this kind of goes over the top. And the danger that propensity evidence provides, yes, it's allowed by the legislature and the court, and the Illinois Supreme Court warned about it. But if it becomes a focal point of trial, it creates a, where the defendant's not only on trial, here, Mr. Bird was on trial for 20 counts against AR. The state did not choose to ZS's testimony, it was ZS, but they effectively did. And they forced him to defend himself, not only against AR's testimony, but they created a mini trial. And that mini trial was evident when ZS testified regarding the times when Bird lived with her. And Bird had to choose to rebut it. He had to choose to even call his sister to say that he lived with his sister and went to prison. Mr. Steinberg, may I interrupt you for a moment? And I may be incorrect about this, but it's my memory of the cases that you've cited to on this issue, where the concern had been the mini trial ensuing on the other crimes evidence. It was the presentation of the evidence, not the prosecutor's comments in opening statement or closing argument, that was the gist of the appellate court's concerns. It was the amount of evidence of this other crimes evidence that was being presented. And here, relatively speaking, there was a very small amount of other crimes evidence that was actually presented. Do you dispute that? Justice Harris, I dispute that. And I would point to the four instances that ZS testified to. First, she testified that she was lying on her mother's bed between when she was eight and 10 years old, actually younger than AR at the time, AR's testimony, and when she was caressing her butt. Then it's another instance that she recalled when she was 13 years old and got out of the shower, Bird was putting lotion and touched her vagina. Then a third time, another voluminous time, she was wearing a towel by the side of her bed and she accused Bird of rubbing her butt and she got up and went away. Fourth, finally, ZS also, she awoke to one time Bird on top of her, she testified regarding that. That's four instances of conduct. That's just not one. She's not describing that she was, it's dissimilar conduct and it's very much dissimilar. But relatively speaking, defendant was charged with through 29 counts of these offenses. So four acts that constituted the other crimes evidence versus the 29 acts that were alleged in those other counts. But still you would say that that's disproportionate, that that was excessive. These sporadic events that are only generally similar for events that became a focal point of trial are dissimilar. Mr. Steinberg, you seem to be arguing that there was too much evidence and yet that in another context, you're arguing there wasn't enough because it wasn't the same events that were suffered by this victim. So which is it? It's kind of both, your honor, to be honest. It's both sporadic events that are dissimilar and the state's producing a lot of them. So that kind of defeats, that kind of increases the prejudice when you look at the balancing test, the 403 prejudice test, the prejudicial value outweighs its relevance. And when this court analyzes this case, the other crime evidence played a fact. The state cannot meet its burden of proving harmless beyond, cannot meet its burden of showing harmless in this case. Counsel, you mentioned the timeline, meaning how much time had passed between those acts. Do you have authority to suggest that the amount of time that passed was an outlier compared to other cases that are out there? It's kind of in the, it's in the range, courts have actually, Justice Leonard, I'm going to be honest, it's actually in the range of, you know, some courts found a couple of years have passed. Some courts have found maybe 10 years. It's in the range, but it's a factor that must be considered as well as the differences and the general similarities. But there are cases that have held longer times were still appropriate for consideration for the admission of the other crimes evidence, correct? In some cases, yes, Your Honor. But it's a factor that must be considered. Thank you. And I yield my time. Okay. Thank you, Mr. Steinberg. You'll have time in rebuttal. Mr. McNeil, you may proceed. Thank you. May it please the court, counsel, specifically as to Justice Leonard's question, the Seminole case, People v. Donahoe, the abuses were 12 to 15 years prior to the trial or the charges, charges offenses in that case. Also to remember about the section 7.3 argument is that this court's reviewing the trial court's decision for an abuse of discretion, whether these abuses of ZS were sufficiently similar pursuant to section 7.3 to be allowed. After they are allowed, though, the plain language of section 7.3 permits this evidence to be used for any matter whatsoever, specifically and including propensity evidence. That is precisely why the prosecutor offered these offenses or these abuses of ZS in this case, pre-trial, to make sure that he could talk about them in closing argument, which he did. However, that was completely acceptable pursuant to the section 7.3 hearing that they had prior to trial in this case. The similarities Justice Dougherty talked about, defendant was in a position of trust and basically a father figure to both ZS and AR. The abuses both happened, he was in a relationship with both of the mothers. The abuses happened at home when the mother was away and both girls detailed not single incidences but ongoing similar abuses from defendant. ZS did testify about four incidents. I think that was out of an abundance of caution. I think she could have testified to more but she didn't. But it clearly was not a centerpiece just by sheer math. AR testified to dozens, possibly hundreds of incidents of sexual abuse. She said that defendant abused her anytime he wanted to and ZS talked about, again, four incidents. The prosecutor did discuss ZS's in closing argument. But again, that's completely proper and precisely why the state offered this evidence pursuant to section 7.3, which distinguishes it from Standbridge, which defendant cited and this was a fourth district opinion. In that case, the evidence was not offered pursuant to section 7.3. However, this court did state that it possibly could have been and there would be a whole different argument on appeal if it was. Moving on to the Krinkle issue, there simply wasn't a clear and unequivocal complaint of trial counsel's performance in defendant's statement and allocution here. Defendant's statement and allocution was 13 transcript pages long and was basically a closed argument. Relevance of how long it is. I mean, he's not there. It's not a ineffective assistance of counsel hearing. It's a hearing for allocution. So he's got things he's going to say. What difference does it make as to what else was said? Aren't we supposed to look at what was said that's relevant to this inquiry? Well, it goes to this court's words and Thomas, which I cited in my brief. Courts of review are and reasonably should be reluctant to require trial courts to somehow glean an ineffective assistance of counsel claim from every obscure complaint or comment made by a defendant. But that doesn't talk about the 13-page argument, right? In fact, the case that was just decided by Justice Zinov in Whedon, it was in a pre-trial, pre-sentencing investigation report. And those have a lot of things in them. I'm having a hard time understanding why it's relevant that it was one of 13 pages or one of two pages. Just by the general idea of defendant's rambling statement is that he's protesting his innocence. He's not talking about, he's making a closing argument. He was not complaining about counsel performance. We know that if we look at the, at least, and I know these are paragraphs only because the court reporter made them paragraphs. But for our reference, the first paragraph, he does have the phrase, stories uncontested by my attorney. And I would agree that's a reference to counsel, but it's not sufficient to trigger anything. But if we look at the next, I guess this sentence after that, critical pieces of evidence in my defense. So we know that as counsel said, only defense counsel can introduce evidence that is defense. And I guess the suggestion is that maybe he was talking about the things that were introduced, but maybe the state didn't mention. What's your interpretation of that? Again, I don't, he doesn't mention that counsel even had this evidence or that he gave this evidence to counsel or that counsel missed some evidentiary motion that he could have excluded this evidence. He simply says, like most defendants do, there was stuff that wasn't shown at trial. This is simply not enough, especially when- Wasn't there at the outset some reference to not calling witnesses and texts and medical records? Was that not here? That was Mitchell. Okay. So, but in this case where he says, even without my evidence presented, isn't that giving some meaning to the sentence that preceded it? That some of his evidence was not presented? I mean, could something be conjured up? I suppose so, if we look at it favorably. I don't think the trial court has a duty to sua sponte develop an ineffective assistance claim when counsel isn't mentioned at all in that paragraph. I know that, like you said, that's not speaking in paragraphs, but- When he's talking about without his evidence presented, we know only counsel can present evidence. We don't know if he presented that to counsel or not. I mean- Isn't that then the subject of the Krankel inquiry, rather than being this preliminary stage? We're not looking at the merits of this, we're just looking at whether he's raising a contention that counsel was ineffective. I simply don't think that, I think that talking about, if we're talking about a complaint of counsel, counsel has to be mentioned. And I don't think that that is specific enough to automatically assume that he is complaining about counsel. I mean, he could have said, like in Mitchell, counsel had these medical records and he didn't present them. Mitchell was also in my case and this court agreed that there was no, that was not- Who's he talking about? His counsel. No, here- In Mitchell? Here. Who's he talking about when he says, without my evidence presented, about critical pieces of evidence in his defense were never mentioned? Who's he talking about? I guess it could be talking about himself. It could be talking about state witnesses. It could be a number of things that the trial court isn't duty bound to, like I said, create a ineffective assistance claim based on that. He could have, if he would have said, based on evidence, crucial evidence that my counsel had that they didn't permit, based on this cross-examination that counsel could have done to a state's witness that he didn't do, there was none of that. The only thing that, the reason I mentioned the 13 pages is that he only mentions his attorney once. And that's at the very beginning when he talks about stories uncontested by my attorney. Again, he doesn't say if his attorney could contest these stories or what even these stories were meant to be. So this was not an unequivocal or clear assertion of ineffective assistance either. But I think it is, I know Mitchell is not an unpublished, or is not a published opinion, but it is factually similar because that case was also in statement and allocution. And this court stated that we agree with the defendant's statement. Statements were not sufficient to trigger a critical inquiry. Defendant did not explicitly assert that Ripley, which was trial counsel, was ineffective, nor did he expressly complain about something Ripley did or failed to do. So an express complaint or an explicit assertion is required. This court said, defendant's comments most obviously reflect protestations of his innocence, which were based on a claim that his medical records proved R.G.'s testimony was false. In that case, it was medical records that he stated counsel had and didn't present. Still, this court said, under these circumstances, no clear pro se and effective assistance claim was brought to the trial court's attention, and thus the court was not required to inquire further into defendant's However, this protestation of innocence is much more vague than the one in Mitchell, and it was not a clear and unequivocal complaint of trial counsel's performance in this case. So there was no duty for the trial court to conduct a critical inquiry here. Well, certainly it's not as expansive as the statement in Mitchell. This is really one sentence, if we want to look at it that way, perhaps two, when we're looking at the crucial pieces of evidence portion of the statement. But Mr. Steinberg would argue that, okay, defendant didn't explicitly and clearly and expressly state that his counsel failed to do something. But when he says that the evidence was never mentioned, crucial pieces of evidence, in my defense, were never mentioned or brought up, he was clearly represented by counsel at the time and could only present evidence or mention evidence by way of what Mr. Steinberg would say here and express criticism of his counsel. Because he doesn't say that counsel had this evidence or what even this evidence was. This was not enough to, we can't assume that defendant isn't just, again, because it's mostly protesting his innocence. We can't assume that counsel had this evidence and failed to present it. So, I think that's what we're talking about, first of all. But isn't that the follow-up, then, that's required by the trial court to flesh out what the perceived criticism is? If we had a specific criticism of counsel, I would say yes. Here, there is no specific criticism of counsel. And again, if every defendant who wants to throw a Hail Mary and proclaim their innocence in a statement in allocution, I would say all of them qualify as, well, this witness says I'm innocent or something like that. How about they qualify if they say, after criticizing their attorney a few sentences later, crucial pieces of evidence in my defense were never brought up? That's not in every case. That's not in every allocution. Yeah, allocutions vary, obviously. And I would argue that he doesn't criticize his attorney before that. He just says that certain stories are- First of all, he mentions his attorney. Then he mentions the state attorney prior to his discussion of crucial evidence. He could use some organization in his argument structure, there's no doubt about that. But just looking at the words he says, he's not talking about the bailiff, he's not talking about the court. When he says it's in his defense and my evidence, he's not talking about the state. How is he not talking about the one person who could have introduced evidence on his behalf? Because we don't know if, like I said, we don't know that he brought this evidence to- He could be wrong. He may not have a claim. How is this not enough to trigger the court saying, hold on there, Mr. Byrd, tell me what it is you're arguing here? Like I said, there's no specific complaint. I mean, he has to tie the attorney to it somehow, is my position. And I think that this court's position in Thomas is the same, that this is not enough to trigger a Crankwell Inquiry. And certainly this court's position in Mitchell is the same, that this does not rise to the level of a trial court's duty to inquire about counsel's performance, because counsel's not mentioned. And again, it's Rule 23, but can you square that with the Wheaton decision that counsel has just recently brought to the court's attention? Wheaton, he specifically says, my counsel didn't do this and this. In this case, he doesn't do that. Well, and Mr. McNeil, to be fair, I suppose this is the trial court that has the duty to glean from the statement and allocution whether or not defendant is clearly expressing dissatisfaction with his counsel. And when we go back and look at the defendant's statements that precede his statement, that crucial pieces of evidence were never mentioned, and the statements that follow, it is the defendant commenting on the state's evidence that was being presented. So in fairness, I suppose it is a little hard, I would think, being in the trial judge's shoes there, to identify that in real time, that that statement is referencing a critique of defense counsel. Is that essentially what you would say to that? Yes, that's another reason why the 13 pages matter. Either the trial court has to stop defendant almost as soon as he starts his statement and allocution, interrupt him and try to inquire about something or connect two dots to talk about a crankle inquiry, or he has to remember after 10 minutes of a closing argument what specific words defendant stated at the beginning, none of which were specific assertion of ineffective assistance. Like I said, the Thomas Court, which is the fourth district, state that courts of review should be reluctant to require trial courts to glean an ineffective assistance to counsel claim from every obscure complaint. And that's precisely this kind of obscure statement and allocution is precisely the type I think the Thomas Court was talking about. And unless there are other questions, I would ask this court to affirm. All right, I don't see any other questions. Thank you, Mr. McNeil. Mr. Steinberg, rebuttal argument. Thank you, Justice Harris. I may please the court. Thank you, Mr. McNeil. This court, Justice Harris, I believe you accurately summarized my argument about when I was going to argue about the crankle issue. I would like to further add that even if the trial court must keep a watchful eye for an ineffective assistance of counsel, they must be keep, that's what crankle requires. The Illinois Supreme Court wants this court to develop a questions. When we're asking what did counsel know or did not know what evidence was in his possession, that's the whole reason why we even have a minimal inquiry. And is it difficult when the defendant gives a long statement? Yes, but it's still required. The trial court must still, the statements at even the start of this, put the court on notice. Then he talks about evidence that should have been presented such as text messages, medical reports, statements by Clarence Elder. That's what I think the state said was in Mitchell, but that's present here too, right? Well, Mitchell also involved, there was no allegation that Ripley should have actually presented this evidence or should have contested the state's evidence. I'm actually kind of reading from late in the brief or late in the opinion actually right now. So you're saying that in this case, there was just reference disconnect from the attorney discussion to the evidence? In Mitchell, yes, but in here he says the state's evidence should have been contested and he says crucial evidence of my defense were never mentioned. By contested, that implies we know how you contest evidence. That's through presenting evidence, impeachment evidence, cross-examination evidence. The trial court was on notice and even if it had to write a note to itself that like once defendants stop speaking, inquire whether he's actually complaining about counsel, that was required. Even page 17 of the state's response brief says one might have been able to interpret defendant's sole mention of his trial counsel as a claim of ineffective assistance of counsel. I mean, they say sole, we contested more than sole, but the state concedes on page 17 that you can interpret this as a claim of ineffective assistance of counsel. That's putting the court on notice. That's the bare minimum that was required here. And the remedy, this court's remedy has been to temporary remand for such an inquiry to take place. I will have to wait till, if this court decides on that remedy, I'll examine whether that's the appropriate remedy in this, how I'll deal with that. With regard to the other crime evidence, the state solely admitted, this case is very unique in that the state solely admitted this testimony, Zia's testimony to prove propensity and focused on the fact that her allegations meant that the jury should find A.R. guilty. This stacked the trial against him, forced Mr. Byrd to defend himself, and the prejudice stemming from this outweigh, substantially outweigh its probable value. Given the general similarities between the acts, in fact, during opening statements, the state even admitted on page 106 of the record that the conduct with Zia did not escalate to the same level. There's too many differences. The state's focus on this made it too prejudicial. And if there is error, and if there was error, this was a he shed, she shed case. No one else could collaborate Zia's, A.R.'s testimony claims that long-term sexual abuse happened. There was, I mean, in fact, I don't see, this is a weird case because there's no text messages, no DNA evidence, none of the typical signs that you would see in a sexual assault case that usually corroborates a victim's testimony, even if it was someone they know. Mr. Sarah, could you just clarify, was there ever any reference to the evidence that your client feels should have been introduced? You mean during the Krenkel inquiry, correct? Yes. He talks about crucial pieces of evidence, and for 13 pages, he brings up that evidence, such as cross-example text messages from the mother saying that he's innocent, medical reports, A.R. statements to the nurse, whether there were signs of penetration when she was examined to the rape kit, brings up the rape kit, brings up the STD. It brings up a statement that she threatened the clearance elder, that elder said that he dated the mother and could not. So, there's clearly references to this evidence that was not brought up by defense counsel and how he could have contested the state's performance. So, at a minimum, we ask that this court remand for a Krenkel inquiry and also reverse outright for a new trial. All right. Thank you, Mr. Steinberg. Thank you, Mr. McNeil. The case will be taken under advisement and a written decision will be issued.